Steven A. Alpert, NV #8353
PRICE LAW GROUP, APC
5940 S Rainbow Blvd,
Las Vegas, NV 89118
T: (702) 794-2008
F: (866) 401-1457
alpert@pricelawgroup.com
*Attorney for Plaintiff*
*Rosa Khalil*

**UNITED STATES DISTRICT COURT**
**DISRTICT OF NEVADA**

| | |
|---|---|
| Rosa Khalil,<br><br>        Plaintiff,<br><br>v.<br><br>RP On-Site, LLC,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Rosa Khalil ("Plaintiff") brings this action against Defendant RP On-Site, LLC f/k/a On-Site Manager, Inc. ("On-Site" or "Defendant"), and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**NATURE OF THE ACTION**

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*

2. Plaintiff's ordeal, as set forth below, should be a cautionary tale for any credit bureau, and is exactly the kind that the FCRA was intended to ensure against. Plaintiff is on the verge from suffering from an extreme increase in rent and decrease in quality of life because of Defendant's careless errors.

3. The Defendant is a consumer reporting agency ("CRA"), and has a long history of consumer complaints and lawsuits alleging that it unreasonably obtained personal information from other CRAs and/or public records vendors where by it mixed the credit files and information of one consumer with information of another consumer. This mixed file problem is caused by Defendant's reliance on overly broad matching criteria used to sort data into a consumer's credit file.

4. In this case, representative of numerous others, Defendant combined or mixed the credit files of the Plaintiff with another individual, even though their full names, states of residence, and social security numbers are different.

5. Accordingly, Plaintiff alleges claims against On-Site under the FCRA, 15 U.S.C. §1681e(b) for failing to reasonably ensure the maximum possible accuracy of his credit reports.

**JURISDICTION AND VENUE**

6. The claims asserted in this complaint arise under §1681e(b) of the FCRA. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b).

## PARTIES

8. Plaintiff resides in Henderson, Nevada, and qualifies as a "consumer" as that term is defined under 15 U.S.C. §1681a(c). Plaintiff is an individual.

9. Defendant On-Site is a corporation that regularly conducts business in this judicial district. On-Site qualifies as a "consumer reporting agency" under the FCRA. Defendant On-Site's principal place of business is located at 2201 Lakeside Blvd., Richardson, TX 75082-4305. On-Site may be served through its registered agent CT Corporation System located at 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## SUBSTANTIVE ALLEGATIONS
### The FCRA

10. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained in their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA, as follows:

> (1) "The banking system is dependent upon fair ***and accurate*** credit reporting. ***Inaccurate credit reports directly impair the efficiency of the banking system***, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

> (4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
>
> 15 U.S.C. §1681a (emphasis added).

11. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (or credit bureaus): (i) credit bureaus must assure maximum possible accuracy of information when preparing consumer reports and to set up reasonable procedures to maintain compliance with this minimum reporting standard; and (ii) credit bureaus must reinvestigate the facts and circumstances surrounding a consumer's dispute and to appropriately and timely correct any inaccuracies.

12. Defendant compiles, maintains, and/or reports information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and reputation. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, the underwriting of insurance for consumers, and importantly here-- housing.

13. Plaintiff has a legally protected interest in Defendant fulfilling its duties under the FCRA, so that the information is reported and maintained fairly, to support maximum levels of confidentiality, accuracy, and relevancy.

**Plaintiff's History, Defendant's Confounding, and Inaccurate Reporting of Plaintiff's History Causing Apartment Denial**

14. Plaintiff Rosa Khalil resides in Nevada with her Husband, Bassam Khalil. They previously lived in Chicago, Illinois and for a short period of time

in Katy, Texas before settling in Nevada in 2016. The Khalils have resided in Nevada since and consider it home.

15. In July 2021, the Khalils' lease on their apartment will be up, and they have been desperately seeking a bigger space. Since the beginning of the Covid-19 pandemic, Bassam Khalil's brother has been residing with the couple out of necessity.

16. After an extensive search for a new apartment, the Khalils finally found an apartment to accommodate all their needs.

17. In or around May 2021, the Khalils applied for an apartment at The Passage, located at 2950 N Green Valley Parkway, Henderson, NV 89014.

18. Plaintiff submitted a rental application to the new building in or around May 2021.

19. As part The Passage Apartment's application review process, The Passage requested a copy of Plaintiff's credit report from Defendant On-Site Manager, LLC. (the "On-Site Report"). Which included a criminal background check of Rosa Khalil.

20. The Khalils had previously never been denied a rental due to a background check and figured that this routine occurrence would in no way hinder their chances of being approved for the new apartment.

21. On or about May 10, 2021, Plaintiff received a rental report from Defendant stating that her application for the new apartment at the Passage had been denied.

22. In the letter, On-Site explained the denial was because "the application does not meet one or more of the requirements that is set forth to "pass/fail"".

23. On the report, On-Site asserts that Rosa Khalil "failed" due to Plaintiff's criminal history. However, Plaintiff has never been convicted of a crime.

24. Upon information and belief, it has come to light that On-Site has mixed Plaintiff's file with that of a Rosa Ruiz Hernandez.

25. Plaintiff's full maiden name is Rosa Arlene Hernandez, and she was born on August 30, 1966. Plaintiff took her husband's last name, Khalil, in or around the year 2005.

26. Upon information and belief, On-Site reported the criminal history of a Rosa Ruiz Hernandez who was also born in August 1966 but the day of her birth was not identified.

27. The criminal conduct reported by On-Site occurred in Dallas, Texas during the year 2018.

28. Plaintiff has never been to Dallas Texas and was never arrested or ticketed in Dallas Texas.

29. On-Site's reporting is inaccurate, misleading, and in this case detrimental to Plaintiff's ability to obtain housing.

30. Due to this inaccurate reporting, Plaintiff has been unable to get approved for a new apartment. Plaintiff and her spouse have not attempted to apply for any other apartments out of fear that they will be summarily rejected.

31. If Plaintiff is forced to remain in the existing apartment at the expiration of the existing lease in July 2021, their rent will increase by Six Hundred Dollars ($600.00) per month.

32. Plaintiff has been forced to deal with the aggravation and humiliation of being confronted with a purported prior criminal history that did not belong to Plaintiff and was entirely false. Furthermore, Plaintiff has suffered stress, anxiety and sleepless nights. Plaintiff's desire for a larger living space is due in large part to her brother-in-law living with her and her husband.

### On-Site's Double Standard and Willful Misconduct

33. On-Site has substantial notice and knowledge of the "mixed file" problem and failure of its business procedures and systems.

34. As early as 1992, the Attorneys General of several states were forced to file a lawsuit against non-party Equifax Information Services, LLC ("Equifax") because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the Attorney Generals relating to Equifax's responsibilities to prevent mixed files.

35. Similar enforcement action was brought against non-defendant Experian Information Solutions, Inc. ("Experian") [formerly TRW, Inc.] in 1991 and 1992 and resulted in consent orders where Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. *See TRW, Inc. v. Morales*, Civil Action No. 3-91- 1340-H (N.D. Tex. 1991); *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991).

36. Only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread violations of the FCRA, including the creation of mixed files and then furnishing them to users who

did not have a permissible purpose to view the information of the consumer. *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995). This enforcement action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

37. Then, in 2015, the New York Attorney General was forced to file a lawsuit against all three credit bureaus because of their conduct in connection with mixing consumer credit files. As part of the settlement, Defendant agreed to implement procedures to ensure accurate reporting.

https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf.

38. Despite this extensive notice, On-Site's computer system still causes mixed files because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. On-Site does this in order to sell more credit reports.

39. Like here, On-stie failed to match Plaintiff's full name allowing a woman with a completely different middle name to appear on her credit report. Defendant failed to confirm the date of birth listing only 8/**/1966 and did not confirm the social security number.

40. Defendant fails to take into consideration that Plaintiff has a common first and last name or that Plaintiff had been married for nearly 20 years using a completely different last name at the time the crime occurred.

41. On-Site acknowledges that its computer system causes credit reporting errors. On-Site explains that some errors are caused by "*confusion between consumers with similar personal information.*"[1]

42. Despite its recognition of the mixed file problem, On-Site knowingly chooses to ignore the mixed-file problem, even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

43. Moreover, the credit bureaus, including On-Site, have been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Miller v. Equifax Info. Sers.*, LLC, 3:11- cv-1231 (D. Or. 2011) (jury verdict of $18.6 million); *Malverty v. Equifax Info. Servs. LLC*, 8:17-cv-1617 (M.D. Fl. 2017); *Philbin v. On-Site Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. On-Site Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. On-Site Corp.,* Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. On-Site*, C.A. No. 00- 1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. On-Site*, (E.D. Cal.) ($990,000 verdict); *Price v. On-Site*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. On-Site*, LLC, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011); *Calderon v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Information Solutions, Inc.*, Civ. No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Solutions, Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Solutions*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, et al., Civ. No. CV 09-

427 (C.D. Cal. 2009); *Campbell v. Experian Info. Solutions, Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Solutions, Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs., LLC*, No. 48-2003-CA-9035-O (Orange County 2007).

44. Despite these lawsuits and enforcement actions, On-Site has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

45. Upon information and belief, On-Site has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

46. Accordingly, On-Site's violation of the FCRA were willful and render it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

47. Plaintiff and her husband paid $53.00 for three background checks for the apartment, as well as a $225.00 application fee. This money was lost by Plaintiff as a result of the inaccurate information reported about Plaintiff.

### CAUSES OF ACTION
### COUNT I
### Against On-Site for Violations of the FCRA, 15 U.S.C. § 1681e(b)

48. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiff.

49. As a result of this alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to the anguish, humiliation, and panic related to the denial of a rental unit, aggravation, inconvenience, embarrassment, and frustration.

50. On-Site's willful and/or negligent failure to follow reasonable policies and procedures and ensure maximum accuracy was a direct and proximate cause of Plaintiff's injury.

51. As a result of On-Site's statutory violations, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover statutory, actual, punitive damages, and his attorney's fees from On-Site in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

a) awarding Plaintiff statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

b) awarding attorneys' fees and costs, and other relief; and

c) awarding such other relief as to this Court may seem just and proper.

Respectfully submitted this 4th day of June 2021,

By: */s/Steven A. Alpert*
Steven A. Alpert, NV #8353
PRICE LAW GROUP, APC
alpert@pricelawgroup.com
*Attorney for Plaintiff*
*Rosa Khalil*